UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

HUSEYIN ULGER,

           Petitioner,

    -v-                                  No. 20-CV-2952-LTS

WILLIAM BARR et al.,

           Respondents.

--------------------------------------------------------x

### MEMORANDUM ORDER

Petitioner Huseyin Ulger ("Ulger" or "Petitioner"), who has been detained without a bond hearing by the United States Department of Homeland Security in connection with removal proceedings, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Ulger has been detained since January 27, 2020, pursuant to a provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates the detention of aliens who have committed certain crimes. Ulger seeks immediate release from the custody of Immigration and Customs Enforcement ("ICE") claiming that, in light of his personal medical characteristics and what he contends is an insufficient ICE response to the risk of COVID-19 contagion, his current conditions of confinement violate his due process rights. Ulger also seeks costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

The Court has jurisdiction of this petition pursuant to 28 U.S.C. §§ 1331 and 2241.

The Court has considered thoroughly the record, including Ulger's Amended Petition and accompanying exhibits (Docket Entry No. 6, "Am. Pet."[1]), Respondents' memorandum in opposition to the Amended Petition and accompanying papers (Docket Entry Nos. 8-10), and Ulger's reply memorandum and accompanying exhibits (Docket Entry No. 11.).

 For the following reasons, Ulger's Amended Petition is denied in its entirety.

BACKGROUND

The pertinent, undisputed facts of this case, which are drawn from the Amended Petition unless otherwise noted, are summarized as follows.  Ulger is a 49-year-old man from Turkey.  (Am. Pet. ¶¶ 2, 5.)  He has lived in the United States for about 30 years.  (Am. Pet. ¶ 55.)  Ulger has been charged as removable from the United States pursuant to Sections 237(a)(2)(A)(ii)[2] and (a)(1)(B)[3] of the INA.  (Am. Pet. ¶ 56.)  Ulger has been detained since January 27, 2020, at the Orange County Correctional Facility ("OCCF") pending removal by ICE.  (Am. Pet. ¶ 5.)  The Notice to Appear served on Petitioner alleges that he is removable from the United States because he (i) remained in the United States beyond the expiration of a temporary visa issued on January 16, 1990, and (ii) was convicted of third degree grand larceny,

---

[1]     Ulger filed his initial Petition on April 10, 2020.  (Docket Entry No. 1.)  On April 16, 2020, Ulger filed an Amended Petition, which amended the Petition to add Carl E. DuBois as a Respondent.  (Docket Entry No. 6.)

[2]     Section 237(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable."  8 U.S.C.A. § 1227(a)(2)(A)(ii) (Westlaw through P.L. 116-139).

[3]     Section 237(a)(1)(B) provides that "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."  8 U.S.C.A. § 1227(a)(1)(B) (Westlaw through P.L. 116-139).

fifth degree criminal possession of stolen property, and fourth degree grand larceny—crimes involving moral turpitude.  (Am. Pet. ¶ 56; Return to Habeas Petition, Docket Entry No. 10, Ex. A at 4.)

Ulger is obese and suffers from high blood pressure.  (Am. Pet. ¶ 59.)  He asserts that these health conditions, combined with his inability to take appropriately precautionary measures at OCCF, place him "at high risk of contracting COVID-19 and at a much higher risk of serious illness or death than the general population as a result."  (Id.)

Respondents proffer that "ICE has been comprehensively responding to developments regarding the COVID-19 outbreak since it began."  (Respondents' Memorandum of Law in Opposition to Petitioner's Amended Petition for Writ of Habeas Corpus ("Resp. Opp."), Docket Entry No. 8, at 4.)  ICE has adopted and implemented measures to prevent the spread of COVID-19 to and within the OCCF.  According to ICE's proffered declaration of Supervisory Detention and Deportation Officer Thomas Flynn, ICE is screening each detainee for disabilities upon admission and providing reasonable accommodations as medically appropriate.  (Declaration of Supervisory Detention and Deportation Officer Thomas Flynn ("Flynn Decl."), Docket Entry No. 9, ¶ 9.)  During those screenings, detainees are assessed for fever, respiratory illness, and COVID-19 exposure issues.  (Flynn Decl. ¶ 10.)  ICE has reviewed its detained population for individuals who may be "at risk" according to guidelines published by the Center for Disease Control ("CDC")[4] and has "adjusted custody conditions, when

---

[4]     Respondents have relied on the CDC's *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html, and *Coronavirus Disease 2019 (COVID-19) – Groups at higher risk for severe illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.  (Resp. Opp. at 4-5, 12.)

appropriate, to protect health, safety and well-being of its detainees." (Flynn Decl. ¶ 22.)
Petitioner has not been categorized as "higher risk" under these guidelines because (i) his BMI is
nearly seven points lower than the BMI measure for severe obesity, (ii) high blood pressure is
not considered a factor placing him at higher risk for severe illness from COVID-19, and (iii) he
is not 65 years old. (Resp. Opp. at 12; Reply in Support of Petitioner's Amended Petition for
Writ of Habeas Corpus ("Pet. Reply"), Docket Entry No. 11, at 2.)

        Each detainee at OCCF is screened for possible COVID-19 exposure and/or
symptoms, and is monitored or isolated as needed. (Flynn Decl. ¶¶ 10-11.) Staff and vendors
are also screened for COVID-19 symptoms before they enter the facility. (Flynn Decl. ¶ 18.)
Detainees who are symptomatic and test positively for COVID-19 will be isolated, treated, and
hospitalized if clinical deterioration occurs. (Flynn Decl. ¶ 11.) Detainees with known exposure
to COVID-19 are either placed in cohorts with restricted movement for 14 days after the most
recent exposure and monitored daily for symptoms (if asymptomatic) or are referred to a medical
provider for evaluation and possible isolation (if symptomatic). (Flynn Decl. ¶ 12.)

        Detainees at OCCF are permitted daily access to sick calls and have access to an
onsite medical infirmary. (Flynn Decl. ¶ 13.) The staff at OCCF regularly clean and disinfect
the housing units, and detainees are provided with hand sanitizer. (Flynn Decl. ¶ 16.) OCCF is
not overcrowded—it is currently populated within approved capacity. (Flynn Decl. ¶ 15.)
Respondents further proffer that, as of the morning of April 16, 2020, one ICE detainee at OCCF
was showing potential COVID-19 symptoms, but there were still no confirmed cases of COVID-
19 in the facility. (Flynn Decl. ¶ 14.)

<u>DISCUSSION</u>

Section 2241 of Title 28 of the United States Code "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  <u>Wang v. Ashcroft</u>, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Petitioner is detained pursuant to Section 1226(c) of Title 8 of the United States Code, which commands the Attorney General to "take into custody any alien who falls into one of several enumerated categories involving criminal offenses and terrorist activities."  <u>Jennings v. Rodriguez</u>, 138 S. Ct. 830, 837 (2018) (internal quotation marks omitted).  Section 1226(c) applies to aliens present in the country who may be removed if they are classified as "deportable alien[s]" under 8 U.S.C. Section 1227(a).  <u>Id.</u>  For example, an alien is classified as "deportable" if he has been convicted of multiple crimes involving moral turpitude after being admitted into the United States.  8 U.S.C.A. § 1227(a) (Westlaw through P.L. 116-138).  The statute requires that such detention continue through the removal proceedings.  <u>Jennings</u>, 138 S. Ct. at 842.

Ulger claims that his continued detention violates his substantive due process rights, asserting that Respondents are deliberately indifferent to his medical needs and that his detention during current pandemic conditions is unconstitutionally punitive.  "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment."  <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29 (2d Cir. 2017)[5]  "Immigration

---

[5]     In his reply, Petitioner relies on <u>Helling v. McKinney</u>, 509 U.S. 25 (1993) and <u>Hutto v. Finney</u>, 437 U.S. 678 (1978), which both concerned the Eighth Amendment rights of convicted persons, rather than the substantive due process rights implicated by Ulger's petition.  (Pet. Reply at 4-5.)  These decisions are instructive, however, in that teach that prisoners may not be exposed to unreasonable risk with respect to their future health, and that conditions of confinement may not "transgress today's broad and idealistic concepts

detainees can establish a due process violation for unconstitutional conditions of confinement by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." Basank v. Decker, No. 20 Civ. 2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. March 26, 2020) (quoting Darnell, 849 F.3d at 35). Petitioner need not wait until he sustains serious injuries in confinement, he can establish a due process violation by showing that he is exposed to "conditions that pose an unreasonable risk of serious damage to [his] future health." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks omitted). One way that an immigration detainee can establish a due process violation for unconstitutional conditions of confinement is by showing that a government official was deliberately indifferent to his or her serious, unmet medical needs. Charles v. Orange Cty., 925 F.3d 73, 85-86 (2d Cir. 2019).

Respondents "undoubtedly [have] a legitimate interest in ensuring that the petitioners do not flee and in protecting the public." Rafael L.O. v. Tsoukaris, No. 20 Civ. 3481 (JMV), 2020 WL 1808843, at *9 (D.N.J. Apr. 9, 2020). This legitimate interest is particularly acute in Petitioner's case, as he is detained pursuant to a statute that mandates detention and he has been convicted of certain crimes of moral turpitude. However, the government's legitimate interest must yield if the conditions of confinement present unreasonable or excessive risks to a detainee's health. Here, Petitioner has failed to demonstrate that Respondents have exposed him to unreasonable or excessive risks to his health.

At this point in time, COVID-19 poses a risk to the health and safety of everyone, regardless of their detention status. The Court recognizes that the current public health crisis

---

of dignity, civilized standards, humanity, and decency." Helling, 509 U.S. at 36; Hutto, 437 U.S. at 685-88 (internal quotation marks omitted). Substantive due process standards incorporate the same proscriptions.

presents an elevated risk for those who are confined, as compared to those living in situations where social distancing is more feasible and where the most effective cleaning products are more readily available.  However, the Court must evaluate the reasonableness of Respondents' actions in light of the general risk of contagion, which cannot be eliminated entirely for anyone. Respondents have proffered uncontroverted evidence that they have taken objectively reasonable measures to mitigate the spread of COVID-19 within the OCCF.  They are screening detainees for disabilities and factors that place them at higher risk of contracting severe illness from COVID-19; detainees are being monitored for COVID-19 exposure and symptoms and being isolated and tested accordingly; detainees have access to medical care at the facility; Respondents are regularly cleaning housing units; and detainees are provided with hygienic supplies like hand sanitizers.  Respondents have adjusted custody conditions, when appropriate, to protect health, safety and well-being of the detainees who are at higher risk of severe illness under CDC guidelines.

The reasonableness of Respondents' actions must also be viewed in light of Petitioner's individual health conditions.  Petitioner does not contend that he has any specific medical need that has not been addressed by Respondents.  Petitioner is not an individual who is at higher risk of severe illness from COVID-19 according to CDC guidelines, which Respondents have used as a benchmark for "adjusting custody conditions, when appropriate, to protect health, safety and well-being of its detainees."  (Flynn Decl. ¶ 22.)  Petitioner contends that his age and obesity place him "in the high-risk category of severe illness" according to results from a study conducted by infectious disease epidemiologist, Dr. Joseph J. Amon, and recent data published by the American Medical Association.  (Pet. Reply at 1-2.)  The relevant inquiry, however, is not whether Respondents must follow medical guidance that is more

favorable to Petitioner's position; instead, the Court must determine whether the guidance

Respondents are currently using—guidelines published by the CDC—is objectively reasonable.

Here, Petitioner has not proffered any basis for the Court to conclude that Respondents' reliance

on the CDC's guidance is unreasonable.

Respondents are not "the guarantors of the safety of [Petitioner] from COVID-19

. . . nor is the mayor and Governor of the State of New York or President of the United States the

guarantor of the safety of the people on the streets of Manhattan." U.S. v. Robert Lewis, 20 Cr.

234 (S.D.N.Y. Apr. 1, 2020) (Castel, J.).  General dissatisfaction with Respondents' current

measures is insufficient to support a due process claim.  Here, the record provides no basis for a

conclusion that Respondents have "ignore[d] a condition of confinement that is sure or very

likely to cause [Petitioner] serious illness and needless suffering the next week or month or

year," or deliberately disregarded an excessive risk to Petitioner's health or medical need.

Helling, 509 U.S. at 33.  While the measures Respondents are taking to prevent the spread of

COVID-19 within the OCCF are necessarily imperfect, they are reasonable.  The Court has no

basis to conclude, on the current record, that Respondents have responded or failed to respond to

the COVID-19 crisis in a way that creates an excessive or unreasonable risk to Petitioner's health

and safety.[6]

---

[6]     Petitioner cites certain non-binding authority for the proposition that the measures taken
at the OCCF "are nowhere near sufficient."  (Pet. Reply at 4, 6-7.)  However, the cited
decisions are distinguishable both factually and procedurally.  First, those decisions
concerned requests for preliminary injunctive relief—therefore, those courts made only
preliminary determinations as to the likelihood of success on the merits, rather than a
final determination on the merits.  Second, those decisions were based on materially
different factual proffers.  The petitioners in Rafael L.O. v. Tsoukaris proffered evidence
that the relevant detention facilities had failed to implement social distancing measures
and that detainees lacked access to medical care and hygienic supplies such as soap and
hand sanitizer.  2020 WL 1808843, at *4.  Similarly, the petitioners in Cristian A.R. v.
Decker proffered evidence that Respondents had demonstrated "a lack of attention to

For these reasons, Petitioner has not stated a substantive due process claim, and his Petition is denied in its entirety.[7]  Because the Court has concluded that the Petition is deficient as to the merits, the Court need not address the parties' arguments concerning the Court's ability to conduct a bond hearing and order Petitioner released.

Costs and Attorneys' Fees

Petitioner requests an award of his costs and reasonable attorneys' fees incurred pursuant to the EAJA, 28 U.S.C. Section 2412.  Under Section 2412, the prevailing party in a civil action against the United States is entitled to attorneys' fees and other expenses unless the position of the United States "was substantially justified."  28 U.S.C.A. § 2412(a)(1), (d)(1)(A) (Westlaw through P.L. 116-139).  A "prevailing party" is "'[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'"  Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (quoting Black's Law Dictionary).  Because the Court has dismissed all of Petitioner's claims, Petitioner is not the prevailing party in this action.  Therefore, Petitioner's request for costs and attorneys' fees is denied.

---

their and other detainees' medical needs and basic hygiene."  No. 20 Civ. 3600 (D.N.J. Apr. 12, 2020), at 11.  Petitioners in Thakker v. Doll also proffered evidence of overcrowded and unsanitary conditions in their detention facilities.  No. 20 Civ. 480, 2020 WL 1671563, at *5-6 (M.D. Pa. Mar. 31, 2020).  In Basank v. Decker, Respondents could not make representations concerning their social distancing measures or about "steps taken to protect high-risk detainees like Petitioners."  2020 WL 1481503, at *5. Here, by contrast, the record includes specific, uncontroverted information as to mitigation measures that have been implemented at the OCCF.

[7]     The two causes of action pleaded in the Amended Petition—one for deliberate indifference to medical needs and the other for punitive conditions—are both substantive due process claims.  Darnell, 849 F.3d at 29.  Petitioner has failed to establish a substantive due process violation under either ground.

CONCLUSION

For the foregoing reasons, the Petition is denied in its entirety.  The Clerk of

Court is respectfully requested to enter judgment in Respondents' favor, and close this case.

Docket Entry Nos. 1 and 6 are resolved.


        SO ORDERED.

Dated: New York, New York
        April 29, 2020

                                     __/s/ Laura Taylor Swain____
                                     LAURA TAYLOR SWAIN
                                     United States District Judge